# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ANGELA JOHNSON, individually, and as )
Mother and Next Friend of B.F., a Minor, )
                        Plaintiffs, )
vs. )   Case No. CIV-17-1058-M
INDEPENDENT SCHOOL DISTRICT )
NO. 3 OF OKLAHOMA COUNTY, )
OKLAHOMA a/k/a LUTHER PUBLIC )
SCHOOLS, a Political Subdivision of the )
State of Oklahoma, et al., )
                        Defendants. )

## ORDER

Before the Court are the Motion to Dismiss by the Defendants Independent School District No. 3 of Oklahoma County, Oklahoma; the Board of Education of the School of Luther; Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy, and Donita Mackey, All in Their Official Capacities as Luther School Board Members and the Motion to Dismiss by the Defendants Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy and Donita Mackey in Their Individual Capacities. Plaintiffs have filed their combined response to defendants' motions to dismiss, and defendants have filed their joint reply.

I.     Introduction[1]

Beginning in the latter part of 2014, B.F. began texting with Kyle Whitmus ("Whitmus"), the band director employed with defendant Independent School District No. 3 of Oklahoma County, Oklahoma a/k/a Luther Public Schools ("LPS"), about issues she was having at home.

---

[1] The facts set forth in this Introduction are based upon the facts set forth in plaintiffs' Original Complaint [docket no. 1].

B.F. was 12 years old at the time and a 6th grader at Luther Middle School. B.F. and Whitmus' texts grew sexual in nature and continued for months. The text messages between B.F. and Whitmus graduated into several face-to-face meetings after band class on school property and during school hours. After band class was dismissed, B.F. would wait behind and Whitmus would kiss B.F. and touch her private parts over her clothing. B.F. would then hurry to the bus to be transferred back to the middle school.

Sometime in January 2015, Whitmus made a plan to have B.F. stay after class and not take the bus back to the middle school. Once the bus left, B.F. and Whitmus were alone in the building, and they engaged in sexual intercourse in the band room.[2] Following the sexual intercourse, a Luther Public School counselor heard rumors of the relationship between B.F. and Whitmus. The counselor brought the rumors to the attention of B.F.'s parents. B.F.'s parents contacted the authorities. On February 16, 2016, Whitmus was arrested for having a sexual relationship with a child under the age of 14. Whitmus was sentenced in Oklahoma County on July 24, 2017.

Whitmus' wife testified during the sentencing hearing that in the fall of 2011, she told the superintendent of LPS that Whitmus was having an inappropriate relationship with a young female student. No action was taken by LPS or the administrators. Additionally, in 2012, during a school sponsored band trip, Whitmus was caught in a hotel room in Dallas, Texas alone with a young, underage student. Although Whitmus was suspended for two days, no investigation was initiated nor was the conduct reported to the Department of Human Services. Following the hotel incident, Whitmus was caught, again, with the same young, underage student alone at lunch. Again,

---

[2] The band room was in a separate building located 8 blocks south of the Luther Middle School. LPS had an official school policy/custom wherein students were bused to the band room via school bus and bused back to the middle school. The band director (Whitmus), alone, was responsible to account for the students when the students returned to the bus.

Whitmus was suspended for two days, but no investigation was initiated nor was the conduct reported to the Department of Human Services. On at least one other occasion prior to the incident at bar, Whitmus was observed acting inappropriately with a young, underage female student while on a school sponsored band trip. This conduct was witnessed by several parents and at least one Luther School Board member. Again, no investigation was initiated and no action was taken.

On October 4, 2017, plaintiffs filed the instant action, alleging the following causes of action: (1) negligence against LPS, (2) intentional infliction of emotional distress, (3) assault and battery, (4) negligence per se, (5) vicarious liability, (6) negligence against the Board of Education of the School of Luther ("Luther School Board"), (7) liability under § 1983, and (8) liability under 20 U.S.C. § 1681 ("Title IX"). Defendants LPS, the Luther School Board, and the Luther School Board Members now move this Court to dismiss all causes of action against them.

## II.  Discussion

### A.  Luther School Board and Luther School Board Members

In their response, plaintiffs concede to the dismissal of the Luther School Board Members in both their official and individual capacities and to the dismissal of the Luther School Board. Accordingly, the Court finds that defendant Luther School Board and defendants Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy, and Donita Mackey, in both their official and individual capacities, should be dismissed.

### B.  Causes of Action Against LPS

#### 1.  Negligence, negligence per se, and vicarious liability

LPS asserts that plaintiffs' causes of action for negligence, negligence per se, and vicarious liability should be dismissed for failure to comply with the mandatory time provisions in the Oklahoma Governmental Tort Claims Act. Specifically, LPS asserts that plaintiffs' January 9,

2017 notice of tort claim to LPS is untimely because it was filed more than one year from when plaintiffs' claim accrued against LPS. LPS contends that plaintiffs had notice of a possible inappropriate relationship between B.F. and Whitmus as early as April 5, 2015 and had until April 5, 2016 to file a notice of tort claim with LPS.

Plaintiffs assert that their tort claim notice was timely given or, alternatively, that a question of fact remains as to the appropriate accrual date. Specifically, plaintiffs assert that the injury underlying their negligence claims against LPS is not the underlying inappropriate relationship between Whitmus and B.F. but the multiple failures on the part of LPS to protect and prevent this type of abuse and that the date plaintiffs discovered LPS' conduct underlying their claims for negligence, negligence per se, and vicarious liability is the appropriate date to use to determine the timeliness of the notice of tort claim. Plaintiffs further contend that the facts supporting their negligence claims did not become known to them until the preliminary hearing in Whitmus' criminal trial, which occurred on February 25, 2016. Finally, plaintiffs contend that LPS failed to disclose information that could have provided them enough information to properly make a claim sooner.

"The Oklahoma Governmental Tort Claims Act ('GTCA'), provides the exclusive remedy for an injured plaintiff to recover against a governmental entity in tort." *Watkins v. Cent. State Griffin Mem'l Hosp.*, 377 P.3d 124, 130 (Okla. 2016). The time frame for bringing a tort claim under the GTCA is narrowly structured. *See id.* "[C]laims against the state or a political subdivision are to be presented within one (1) year of the date the loss occurs" and said claims "shall be forever barred unless notice thereof is presented within one (1) year after the loss occurs." Okla. Stat. tit. 51, § 156(B). The loss in the instant action is B.F.'s injuries resulting from the inappropriate relationship between B.F. and Whitmus. Therefore, plaintiffs had until April 5, 2016

4

to file a notice of tort claim with LPS. Plaintiffs' January 9, 2017 notice of tort claim, thus, was untimely and plaintiffs' negligence causes of action should be dismissed unless LPS is estopped from raising the defense of the time limitation bar under the GTCA.

The Oklahoma Supreme Court has not applied the discovery rule to the GTCA's time limits set forth in its notice provisions. The Oklahoma Supreme Court has, however, identified specific types of allegations that will estop a defendant from raising the defense of the time limitation bar under the GTCA. "Included in this list are allegations of false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion or preclude inquiry, which induces one to refrain from timely bringing an action." *Watkins*, 377 P.3d at 131 (internal quotations omitted).[3] The Oklahoma Supreme Court has held that for this doctrine to apply, there must be evidence of a defendant's false, fraudulent, or misleading conduct, or an affirmative act of concealment to induce a plaintiff from timely bringing an action. *See Watkins*, 377 P.3d at 132.

Having carefully reviewed plaintiffs' Original Complaint, the Court finds that plaintiffs have not set forth any allegations of false, fraudulent or misleading conduct or any affirmative act of concealment to exclude suspicion or preclude inquiry on the part of LPS. Further, the Court finds that plaintiffs' allegations regarding LPS' "failure to disclose information" set forth in their response to defendants' motions to dismiss would not constitute false, fraudulent, or misleading conduct or an affirmative act of concealment meant to induce plaintiffs from timely bringing an action. Specifically, the Court finds that plaintiffs' allegations do not set forth any affirmative

---

[3] The following types of allegations have been identified to estop the defense of the time limitation bar under the GTCA: "some assurance of settlement negotiations reasonably calculated to lull the plaintiff into a sense of security and delay action beyond the statutory period, or (b) an express and repeated admission of liability in conjunction with promises of payment, settlement or performance, or (c) any false, fraudulent or misleading conduct or some affirmative act of concealment to exclude suspicion and preclude inquiry, which induces one to refrain from timely bringing an action." *Watkins*, 377 P.3d 124, 131, n.18 (internal quotations and citation omitted).

5

conduct on the part of LPS and are only allegations that LPS omitted to provide certain information.

Accordingly, the Court finds that plaintiffs' negligence, negligence per se, and vicarious liability causes of action against LPS should be dismissed.

2. <u>Intentional infliction of emotional distress and assault and battery</u>

LPS contends it cannot be held liable for the intentional infliction of emotional distress or the assault and battery caused by Whitmus. Specifically, LPS asserts that the alleged actions of Whitmus were not taken in good faith, were intentional and deliberate, and were outside the scope of Whitmus' employment. LPS, therefore, contends that any cause of action for intentional infliction of emotional distress or assault and battery is exempt under the GTCA.

Plaintiffs assert that their causes of action for intentional infliction of emotional distress and assault and battery are not barred against LPS. Specifically, plaintiffs contend that the scope of Whitmus' employment is a question of fact and that at this early stage of the litigation, these causes of action should be allowed to continue. Plaintiffs further contend that while they do not contend that the abhorrent conduct of Whitmus was done in furtherance of LPS' educational mission, this should not preclude holding LPS liable under a theory of respondeat superior because LPS' failure to remedy the repeated instances of Whitmus' inappropriate behavior allowed this type of predatory behavior to become part of Whitmus' scope of employment.

Under the GTCA,

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state. The state or a political subdivision shall not be liable under the provisions of The

> Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment.

Okla. Stat. tit. 51, § 153(A). Further, the GTCA defines "scope of employment" as the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ." Okla. Stat. tit. 51, 152(12). Additionally, courts have consistently found that the conduct involved in claims of assault, battery, and intentional infliction of emotional distress fall outside the scope of an employee's employment, precluding respondeat superior liability on the part of a political subdivision under the GTCA. *See, e.g., Shaw v. City of Okla. City*, 380 P.3d 894 (Okla. Civ. App. 2016); *Scheerer v. City of Okla. City*, No. 96-6178, 1997 WL 4276 (10th Cir. Jan. 7, 1997); *McMullen v. City of Del City*, 920 P.2d 528 (Okla. Civ. App. 1996).

In light of the above authority, the Court finds that plaintiffs' causes of action for intentional infliction of emotional distress and assault and battery based upon respondeat superior liability should be dismissed. Specifically, the Court finds that the conduct of Whitmus upon which these causes of action are based is clearly bad faith conduct falling outside the scope of Whitmus' employment. No court could find that Whitmus' alleged actions of texting sexually explicit messages to B.F., hugging and kissing B.F., grouping B.F.'s private parts, and forcing sexual intercourse upon B.F. would fall within Whitmus' scope of employment as a band director. Finally, the Court finds that any alleged failure to remedy Whitmus' prior instances of inappropriate behavior by LPS does not turn such bad faith conduct into conduct within the scope of Whitmus' employment.

Accordingly, the Court finds that plaintiffs' intentional infliction of emotional distress and assault and battery causes of action against LPS should be dismissed.

### 3. § 1983

LPS asserts that plaintiffs' claims under § 1983 should be dismissed. "[S]tate officials can be liable for the acts of third parties where those officials 'created the danger' that caused the harm." *Armijo v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1262 (10th Cir. 1998) (internal quotations and citations omitted).[4]

> To make out a proper danger creation claim, a plaintiff must demonstrate that (1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking.

*Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (internal citation omitted).

Having carefully reviewed plaintiffs' Original Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have set forth sufficient factual allegations to state a danger creation claim. In paragraphs 90 and 91 of their Original Complaint, plaintiffs allege:

> 90. Acting under the color of state law, Defendant LPS and Defendant Board followed a course of deliberate indifference and reckless disregard of the known dangerous conditions at Luther Middle School when the official policy/custom of transporting students to/from the band facility by school bus, without any safety measures or checks designed to account for the whereabouts of each and every student. This policy/custom relied upon Whitmus, only, (a known predator of young, underage female students) to account for the whereabouts of students. This official policy/custom was the moving force behind Whitmus being able to be alone with B.F. during school hours and on school property wherein Whitmus could

---

[4] LPS asserts that it is unclear where in plaintiffs' complaint they allege a danger creation due process violation. Upon review of plaintiffs' Original Complaint, the Court finds that plaintiffs allege a danger creation due process violation in their Seventh Cause of Action.

> violate B.F.'s constitutional right to be free of sexual harassment and sexual assault.
>
> 91. Defendant LPS and Defendant Board's acts of deliberate indifference and reckless disregard of the known dangerous condition caused B.F.'s injuries and deprived B.F. of the right and privileges afforded to her under 42 U.S.C. § 1983.

Original Complaint at ¶ 90 and 91. These allegations, in combination with the other allegations in the Original Complaint, sufficiently allege that (1) LPS increased B.F.'s vulnerability to the danger by its policy of allowing only Whitmus to account for the whereabouts of the students, (2) B.F. was a member of the group of young, underage female students, (3) LPS' conduct put B.F. at risk of being sexually harassed or assaulted, (4) LPS knew that Whitmus was a predator of young, underage female students based upon prior incidents with other female students, (5) LPS acted recklessly in conscious disregard of that risk, and (6) such conduct, when viewed in total, is conscience shocking.

Accordingly, the Court finds that plaintiffs' § 1983 cause of action against LPS should not be dismissed.

### 4. Title IX

Title IX provides that "[n]o person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal assistance." 20 U.S.C. § 1681(a). To state a claim of school district liability under Title IX, a plaintiff "must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school." *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1246 (10th Cir. 1999) (internal citation omitted). "[H]arassment of persons other than the plaintiff may provide the school with the requisite notice

to impose liability under Title IX." *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1153 (10th Cir. 2006). Generally, courts "have required that the school have actual knowledge of a substantial risk of abuse to students based on prior complaints by other students." *Id.* at 1154 (internal quotations and citations omitted).

Having carefully reviewed plaintiffs' Original Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have set forth sufficient factual allegations to state a Title IX claim. Accordingly, the Court finds that plaintiffs' Title IX cause of action should not be dismissed.

      5.      Plaintiff Angela Johnson's individual § 1983 and Title IX claims

LPS asserts that plaintiff Angela Johnson's individual § 1983 and Title IX claims are time barred.[5] Specifically, LPS contends that plaintiff Angela Johnson had discovered no later than April 6, 2015, the allegations that her daughter was sexually abused by Whitmus, and her personal claim accrued as of that date. LPS, therefore, contends that plaintiff Angela Johnson had until April 6, 2017 to bring a claim against it pursuant to Title IX and § 1983 and because this action was filed on October 4, 2017, plaintiff Angela Johnson's claims are time barred.

Plaintiff Angela Johnson asserts that her Title IX and § 1983 claims are not time barred. Specifically, plaintiff Angela Johnson asserts that the inappropriate relationship between B.F. and Whitmus, in and of itself, is not the harm for which she seeks recovery, but it is LPS' deliberate indifference to the fact that one of its employees (Whitmus) exhibited predatory behavior well in advance of the inappropriate relationship and LPS did nothing to protect B.F. and other students from Whitmus that is the harm for which she seeks recovery. Plaintiff Angela Johnson, thus,

---

[5] All parties agree that the statute of limitations for plaintiff Angela Johnson's Title IX and § 1983 claims is two years.

contends that these claims did not accrue until she learned of LPS' prior knowledge and failure to act at the preliminary hearing conference on February 25, 2016, and her Title IX and § 1983 claims are, therefore, timely.

Having carefully reviewed the parties' submissions, the Court finds that because plaintiff Angela Johnson's claims are based upon LPS' deliberate indifference and failure to protect B.F. based upon LPS' prior knowledge of Whitmus' predatory behavior, plaintiff Angela Johnson's Title IX and § 1983 claims did not accrue until she learned of LPS' prior knowledge and failure to act on February 25, 2016. The Court further finds that plaintiff Angela Johnson filed this action within two years of the date her Title IX and § 1983 claims accrued. The Court, therefore, finds that plaintiff Angela Johnson's Title IX and § 1983 claims should not be dismissed.

III.    Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS the Motion to Dismiss by the Defendants Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy and Donita Mackey in Their Individual Capacities [docket no. 15] and DISMISSES defendants Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy and Donita Mackey in their individual capacities. Further, the Court GRANTS IN PART and DENIES IN PART the Motion to Dismiss by the Defendants Independent School District No. 3 of Oklahoma County, Oklahoma; the Board of Education of the School of Luther; Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy, and Donita Mackey, All in Their Official Capacities as Luther School Board Members [docket no. 14] as follows: (1) the Court DENIES the motion to dismiss as to plaintiffs' Title IX and § 1983 claims, and (2) the Court GRANTS the motion to dismiss as to plaintiffs' claims against the Board of Education of the School of Luther and Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice

11

Christy, and Donita Mackey in their official capacities as Luther School Board Members, and as to plaintiff's negligence, negligence per se, vicarious liability, intentional infliction of emotional distress, and assault and battery causes of action and DISMISSES plaintiffs' claims against the Board of Education of the School of Luther and Sherri Anderson, Matthew Mohr, Ray Stanfield, Aaron Bachhofer, Patrice Christy, and Donita Mackey in their official capacities as Luther School Board Members, and plaintiff's negligence, negligence per se, vicarious liability, intentional infliction of emotional distress, and assault and battery causes of action.

**IT IS SO ORDERED this 10th day of April, 2018.**

*[Signature]*
VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE